**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1660-24

FULTON BANK, NA,

     Plaintiff-Respondent,

v.

APPLE MOUNTAIN
RECREATION INC., a/k/a APPLE
MOUNTAIN RECREATION
INCORPORATED, JANET M.
KISZONAK, INDIVIDUALLY
AND AS EXECUTRIX OF THE
ESTATE OF ANDREW T.
KISZONAK, NORTHFIELD
BANK, STATE OF NEW JERSEY,
and UNITED STATES OF
AMERICA,

     Defendants-Respondents.

_____

DEANE D. OLIVER,

     Appellant.

_____

Argued October 22, 2025 – Decided December 31, 2025

Before Judges Paganelli and Vanek.

On appeal from the Superior Court of New Jersey, Chancery Division, Warren County, Docket No. F-001131-21.

Patrick J. Spina (Patrick J. Spina, PC) argued the cause for appellant.

Daniel P. Muklewicz argued the cause for respondent Fulton Bank, NA (Eisenberg, Gold & Agrawal, PC, attorneys; Daniel P. Muklewicz, on the brief).

PER CURIAM

Deane D. Oliver appeals from the trial court's January 13, 2025 order denying his post-judgment motion to intervene and request for relief from a trial court order entered in September 2021. Because we conclude the trial court correctly applied the court rules, we affirm.

We glean the facts from the record. On March 3, 2011, Fulton Bank, NA's predecessor received a mortgage from Apple Mountain Recreation, Inc. (Apple) on its property located in the Township of White. On December 23, 2019, Oliver acquired a tax sale certificate from the Township, purportedly as a favor to his friend and owner of the property, Andrew T. Kiszonak. Oliver did not record the tax sale certificate.

On March 3, 2021, Fulton Bank filed a foreclosure complaint against the mortgaged property. Oliver was not named in the complaint. Fulton Bank obtained a final judgment on July 14, 2021. The judgment directed the Sheriff

of Warren County to sell the property and pay proceeds to Fulton Bank to satisfy the judgment. In addition, the Sheriff was to pay surplus funds—funds received in excess of Fulton Bank's judgment amount—into court.

On July 20, 2021, counsel for Fulton Bank "contacted the . . . Township . . . to confirm that there were no outstanding taxes or liens on the [property] . . . prior to" the sheriff's sale. The Township advised counsel of Oliver's "outstanding tax sale certificate."

On August 20, 2021, Fulton Bank filed a motion for an order permitting the property to be sold at the sheriff's sale "[f]ree and [c]lear of [Oliver's] [u]nrecorded [t]ax [s]ale [c]ertificate." Oliver admitted he was served with the motion, nevertheless he failed to respond. In his subsequent motion to intervene, Oliver certified that he "did not, at that time, have money to retain an attorney, but instead . . . read the materials that were served upon [him], which seemed to indicate that [he] was somehow remiss by not 'filing' [his] 2019 [t]ax [s]ale [c]ertificate." Further, he "was not aware that [he] had to do any such thing" because he "understood, generally, that real estate taxes were a lien on property, even ahead of an existing mortgage." Oliver recorded the tax sale certificate with the County Clerk on August 31, 2021. He "did not think [he] needed to do anything else."

A-1660-24

On September 24, 2021, the trial court granted Fulton Bank's motion "to . . . sell the property free and clear of [Oliver's] unrecorded tax sale certificate." The order stated defendants had not filed opposition and the "motion was unopposed." The judge stated Oliver had not recorded his tax sale certificate within three months of the date of sale and, therefore, under N.J.S.A. 54:5-51, it was "void as against [Fulton Bank]'s prior recorded mortgage" and "also void as against any subsequent purchaser, such as a purchaser at sheriff's sale."

In his motion to intervene, Oliver certified that in late September or early October 2021, he received an "additional package" from Fulton Bank's attorney, which included a copy of the September 24, 2021 order. Oliver stated that he "did not understand the decision, nor did [he] have funds available at that time to hire an attorney to review the decision." Oliver explained that he "did not comprehend that the [c]ourt's decision" permitted the sale of the property without him being reimbursed for the payment of taxes.

On January 6, 2023, the trial court ordered surplus funds to be paid to Apple and the United States of America.

Although unrelated to this appeal, on March 29, 2023, PC6REO, LLC filed a motion to intervene, set aside the sheriff's sale, reform the sheriff's deed, and vacate the September 2021 order. The motion was served on Oliver. In

4

Oliver's certification supporting his motion to intervene, he stated it was after receipt of PC6REO's motion that he "began to think about what happened to [him] and all the money that [he] paid in real estate taxes." He stated he read PC6REO's motion papers which "appeared to argue that the [c]ourt's decision to allow Fulton Bank to sell the . . . [p]roperty and not reimburse [him] for real estate taxes paid was somehow incorrect." Further, he asserted "that the money [he] paid for real estate taxes should have been paid to [him] or [there] should have continued to be a lien on the . . . [p]roperty."

Oliver certified that in May 2024, "[t]hrough the help of family, [he] was . . . able to raise sufficient mon[ey] to retain [c]ounsel." On November 15, 2024, Oliver filed a motion to intervene and for relief from the September 2021 order. The trial court issued a preliminary decision on December 18, 2024, and thereafter heard the parties' oral arguments on January 6, 2025. The court denied Oliver's motion to intervene. In a five-page written statement of reasons accompanying the January 13, 2025 order, the trial court stated, "Oliver's ability to intervene rest[ed] on whether he c[ould] establish a valid interest in the [p]roperty that would warrant post-judgment intervention."

The trial court found Oliver had not recorded the tax sale certificate for "more than a year[-]and[-]a[-]half" after acquiring it and Fulton Bank's

A-1660-24

"mortgage interest was recorded . . . approximately a decade before . . . Oliver even acquired the tax sale certificate." The trial court cited N.J.S.A. 54:5-51, providing that "[w]hen the certificate of sale is not made to the municipality, it shall, unless so recorded within three months of the date of sale, be void as against a bona fide purchaser, lessee or mortgagee whose deed, lease or mortgage is recorded before the recording of the certificate." The trial court determined Oliver's "claim [could not] be recognized under the clear language" of the statute.

The trial court considered Oliver's argument that N.J.S.A. 54:5-51 was not applicable because Fulton Bank was "not a bona fide mortgagee since the bank's mortgage [wa]s earlier-in-time than [his] tax certificate." The court stated "a municipal tax lien had priority over a mortgage lien even though the mortgage was prior in time" and noted the "the so-called super-priority of municipal tax liens" under N.J.S.A. 54:5-9 provided "[e]very municipal lien shall be a first lien on such land and paramount to all prior or subsequent alienations and descents of such lands or encumbrances thereon, except subsequent municipal liens." However, it concluded the tax lien was "still subject to the recording statutes."

A-1660-24

Moreover, the trial court found "Oliver was served with notice of the motion to sell the property free and clear of unrecorded liens in 2021." Therefore, Oliver had "an opportunity to protect whatever interest he believed he held by promptly seeking legal relief." However, the trial court noted Oliver took no action, and "conceded that he thought recording the tax sale certificate out of time would have been enough to protect his interest in the [p]roperty." The trial court determined Oliver offered an "insufficient" justification to permit him "to overcome the statutory requirements."

The trial court concluded:

> Oliver's interest in the [p]roperty was extinguished by operation of law when the final judgment was entered without him being a recorded lienholder. He failed to comply with the recording requirements of N.J.S.A. 54:5-51 and did not effectively cure when he received notice that the [p]roperty would be sold free and clear of his lien. He cannot resurrect his interest post-judgment.

The trial court recognized Oliver ultimately sought to vacate the September 24, 2021 order. The court considered the "requested equitable relief" to be "extraordinary" and not to be granted "lightly." The court stated, "[t]he doctrine of unclean hands encompasses the idea that he who seeks equity must do equity." The court found Oliver "did not come to th[e] matter with clean hands" because he "botched recordation" and "failed to respond to a motion in

7

2021."  Under these circumstances, the court concluded Oliver was not entitled to relief.

On appeal, Oliver argues the trial court erred in:  (1) denying his application to intervene; (2) denying his request to vacate the September 2021 order; and (3) applying N.J.S.A. 54:5-51 despite N.J.S.A. 54:5-9 providing him a senior lien status.  Oliver contends the trial court erred in denying his application to intervene as of right and he "should have been permitted to intervene in order to assert his claim against Fulton Bank."  He asserts the court "subjected [him] to proceedings as if [he] was a party (when he was not) [in 2021]; and in 2025 when [he] sought to intervene as a party to protect his rights, the [court found] he had no right to do so."  Oliver argues the court "got the results reversed."

Our rules provide for intervention as of right.  Under Rule 4:33-1:

> Upon timely application anyone shall be permitted to intervene in an action if the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
>
> [(Emphasis added).]

A-1660-24

"A motion for leave to intervene should be liberally viewed." Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:33-1 (2026); see also Allstate N.J. Ins. Co. v. Neurology Pain Assocs., 418 N.J. Super. 246, 254 (App. Div. 2011) ("Rule 4:33-1 is construed liberally") (internal quotation marks omitted). "Consistent with this liberal construction, our courts take a practical approach in determining whether a moving party has a cognizable interest in litigation that it is entitled to protect by intervention." Neurology Pain Assocs., 418 N.J. Super. at 254-55.

"As the rule is not discretionary, a court must approve an application for intervention as of right if the . . . criteria are satisfied." N.J. Dep't of Env't Prot. v. Exxon Mobil Corp., 453 N.J. Super. 272, 286 (App. Div. 2018) (quoting Meehan v. K.D. Partners, L.P., 317 N.J. Super. 563, 568 (App. Div. 1998)). "[T]he trial court's interpretation of th[]e rule[] is subject to our de novo review." Id. at 285.

Alternatively, our rules provide for permissive intervention. Under Rule 4:33-2:

> Upon timely application anyone may be permitted to intervene in an action if the claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a state or federal

9

governmental agency or officer, or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the agency or officer upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

[(Emphasis added).]

"Rule 4:33-2 is 'the more liberal . . . intervention rule,' therefore we must 'review the court's determination of a permissive intervention motion under an abuse of discretion standard.'" M.M. v. Dep't of Child. & Fams., 479 N.J. Super. 471, 485 (App. Div. 2024) (quoting Exxon Mobil Corp., 453 N.J. Super. at 286-87). "Although the ordinary 'abuse of discretion' standard defies precise definition, it arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. and Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

Putting the recording status of Oliver's tax sale certificate aside, when Fulton Bank moved in 2021 for the sheriff's sale to proceed free and clear of Oliver's tax sale certificate, his "claim . . . and the main action ha[d] a question of law or fact in common," M.M., 479 N.J. Super. at 489. Thus, at that time, he

had the right to intervene under Rule 4:33-1. In addition, once Fulton Bank filed its motion, Oliver's "claim," his tax sale certificate, and the mortgage foreclosure action had common "questions of law and fact," and he would have been permitted to intervene under Rule 4:33-2.

However, despite the potential outcome of Oliver's motions if they were filed in 2021, he did not seek to intervene until 2024, more than three years after he had notice of Fulton Bank's motion and the order permitting the sheriff's sale to proceed free and clear of his interest. "The question of timeliness cannot be considered in [a vacuum]." Clarke v. Brown, 101 N.J. Super. 404, 410 (Law Div. 1968) (referring to former Rule 4:37-1(b)). "On the issue of timeliness, the court must consider the purpose for which intervention is sought." Chesterbrooke Ltd. P'ship v. Plan. Bd. of Twp. of Chester, 237 N.J. Super. (App. Div. 1989). Additionally, a trial court must consider "[o]ther factors . . . in connection with timeliness [including] whether the granting of the motion would entail appreciable prejudice to the other parties or the court, and at what state in the total proceedings the motion to intervene is made." Clarke, 101 N.J. Super. at 411; see also M.M., 479 N.J. Super. at 489 (Intervention cannot "unduly delay or prejudice the adjudication of the rights of the original parties."). Intervention after final judgment, let alone after the time to appeal therefrom has expired, is

11

unusual and not often granted. Twp. of Hanover v. Town of Morristown, 121 N.J. Super. 536 (App. Div. 1972).

Applying either Rule 4:33-1 or Rule 4:33-2, we conclude the trial court correctly denied Oliver's motion to intervene. Although not dispositive, Oliver delayed in applying for intervention for over three years after he was notified of Fulton Bank's motion. In the aftermath of the motion, Fulton Bank's judgment was satisfied, and Apple was permitted surplus funds. To allow intervention at this time would prejudice Fulton Bank and Apple. Lastly, there are no unusual circumstances that would weigh in favor or against finding timeliness. Therefore, we conclude intervention was correctly denied as untimely.

Oliver argues the trial court erred in denying relief under Rule 4:50-1(f), because "[u]nder the circumstances presented, equity and justice weigh heavily in [his] favor." In addition, he asserts the court's September 2021 order was entered in "clear error." Oliver contends relief under Rule 4:50-1(f) "may be obtained at any time." Further, he recognizes the Rule only provides relief under "exceptional circumstances," but asserts the Rule's "boundaries 'are as expansive as the need to achieve equity and justice,'" quoting Housing Authority of Morristown v. Little, 135 N.J. 274, 290 (1994).

We review "[t]he trial court's determination under the rule [with] substantial deference, and [will] not . . . reverse[] unless it results in a clear abuse of discretion." US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012). See Flagg, 171 N.J. at 571 (quoting Achacoso-Sanchez, 779 F.2d at 1265).

Rule 4:50-1 "is designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case." Baumann, 95 N.J. at 392 (quoting Manning Eng'g, Inc. v. Hudson Cnty. Park Comm'n, 74 N.J. 113, 120 (1977)). Therefore, "[c]ourts should use Rule 4:50-1 sparingly [and only] in exceptional situations . . . in which, were it not applied, a grave injustice would occur." Badalamenti v. Simpkiss, 422 N.J. Super. 86, 103 (App. Div. 2011) (alterations in original) (quoting Little, 135 N.J. at 289).

Under Rule 4:50-1(f), a trial court "may relieve a party from an order" for any "reason justifying relief from the operation of the . . . order." Motions under the Rule "shall be made within a reasonable time." Rule 4:50-2. "[A] reasonable time is determined based upon the totality of the circumstances." Romero v. Gold Star Distrib., LLC, 468 N.J. Super. 274, 296 (App. Div. 2021). "A significant element in the timeliness of [a Rule 4:50-1(f)] motion, . . . would

consist of the date when [a party] first discovered the facts underlying [their] application . . . ." Palko v. Palko, 73 N.J. 395, 398 (1977). The circumstances "includ[e] the length of time that has passed and a due consideration for competing rights and interests which have come to exist." Friedman v. Monaco and Brown Corp., 258 N.J. Super. 539, 543 (App. Div. 1992); see also Romero, 468 N.J. Super. at 296 ("[M]otions under subsection[] . . . (f) must be brought within a 'reasonable time,' which could be more or less than one[-]year after the judgment, depending on the circumstances.").

"[R]elief from judgments pursuant to R[ule] 4:50-1(f) requires proof of exceptional and compelling circumstances." Harrington v. Harrington, 281 N.J. Super. 39, 48 (App. Div. 1995). "To decide whether to vacate . . . under the Rule, courts consider, among other equitable factors, the extent of the delay in applying for relief, the applicant's fault or blamelessness, and any prejudice to the other party." 257-261 20th Ave. v. Roberto, 259 N.J. 417, 436 (2025).

We conclude the trial court did not misuse its discretion in denying relief under Rule 4:50-1. Initially, we determine Oliver's motion for relief, filed over three years after he was on notice of Fulton Bank's motion, and the September 2021 order, was not made within a reasonable time as required under Rule 4:50-

2.  Moreover, as previously discussed, Fulton Bank and Apple would be prejudiced by any granted relief.

In addition, we conclude Oliver did not establish exceptional or compelling circumstances.  Again, we note the three-year delay in moving for relief under the Rule and the prejudice to Fulton Bank and Apple were relief to be granted.  Moreover, Oliver bears blame or fault for the delay.  He was on notice of the motion and never acted.

To the extent we have not addressed any of Oliver's remaining arguments, they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division