# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RICHARD SACKS, DBA Investors
Recovery Service,
　　　　　*Plaintiff-Appellant,*

　　　　　v.

DEAN DIETRICH; TERI COSTER
BOESCH,
　　　　　*Defendants-Appellees.*

No. 10-16524

D.C. No.
3:10-cv-01330-SI

OPINION

Appeal from the United States District Court
for the Northern District of California
Susan Illston, District Judge, Presiding

Argued and Submitted
October 13, 2011—San Francisco, California

Filed November 23, 2011

Before: J. Clifford Wallace and Sidney R. Thomas,
Circuit Judges, and Lloyd D. George, Senior District Judge.*

Opinion by Judge Thomas

---

*The Honorable Lloyd D. George, Senior District Judge for the U.S.
District Court for Nevada, sitting by designation.

20445

## COUNSEL

Timothy A. Canning, Arcata, California, for the appellant.

Ethan D. Dettmer and Rebecca Justice Lazarus, Gibson, Dunn & Crutcher LLP, for the appellees.

## OPINION

THOMAS, Circuit Judge:

Richard Sacks appeals from the dismissal of his claims against two arbitrators who disqualified him from represent-

ing a client. The district court concluded that the claims were barred by arbitral immunity. We agree and affirm.

I

Plaintiff Richard Sacks entered into a written contract with Vincent Dang to represent him in a securities arbitration proceeding to be administered by the Financial Industry Regulatory Authority ("FINRA").[1]

Dang signed and submitted a "Uniform Submission Agreement," formally submitting the dispute to FINRA. The Agreement stated, in relevant part:

> The undersigned parties hereby submit the present matter in controversy, as set forth in the . . . statement of claim . . . and all related counterclaims or third party claims which may be asserted, to arbitration in accordance with the Constitution, By-Laws, Rules, Regulations, and/or Code of Arbitration Procedure of the sponsoring organization. . . . The undersigned parties further agree and understand that the arbitration will be conducted in accordance with the Constitution, By-Laws, Rules, Regulations, and/or Code of Arbitration Procedure of the sponsoring organization.

Sacks's company, Investors Recovery Service, also submit-

---

[1]FINRA is a "self-regulatory organization" under the Securities and Exchange Act. *See Sacks v. Securities and Exchange Commission*, 648 F.3d 945, 948 (9th Cir. 2011) [hereinafter *Sacks I*] (citing 72 Fed. Reg. 42169 (Aug. 1, 2007); 15 U.S.C. §§ 78c(a)(26), 78s(b)) (explaining FINRA's role and rule-making process). FINRA's rules are approved by the Securities and Exchange Commission ("SEC"). *See id.*; 15 U.S.C. § 78s(b); *see also Credit Suisse First Boston v. Grunwald*, 400 F.3d 1119, 1130-31 (9th Cir. 2005) (explaining how 1975 amendments to the Securities and Exchange Act subjected self-regulatory organizations to more SEC oversight).

ted a Statement of Claim, paid filing fees, and requested a hearing on behalf of Dang. FINRA appointed defendants Dean Dietrich and Teri Coster Boesch as arbitrators to hear and decide Dang's claims.

Sacks first appeared before the arbitration panel during two telephone hearings. The respondents in the arbitration moved to have Sacks disqualified on the grounds that he was ineligible under FINRA Rule 13208. FINRA Rule 13208 provided that "[p]arties may be represented in an arbitration by a person who is not an attorney, unless . . . the person is currently suspended or barred from the securities industry in any capacity."[2] Sacks, who is not an attorney, was barred from the securities industry in 1991. *Sacks I*, 648 F.3d at 948.

In response to this motion to disqualify, Sacks "objected to the panel even considering the issue." He argued that the panel did not have the authority to decide if he could represent Dang, and that he had not contracted with the panel to make any such decisions. He also sent a letter to FINRA, stating in part:

> If the panel actually were to decide this motion adversely to our client, this panel will get sued. Full disclosure is appropriate in this instance. Please advise the panel that in the past, Investors Recovery Service has taken all steps necessary to protect itself against interference with its contractual relationship with its clients, including suing FINRA arbitrators who thought better than to follow FINRA rules . . . .

---

[2]Rule 13208 also provided that "[i]ssues regarding the qualifications of a person to represent a party in arbitration are governed by applicable law and may be determined by an appropriate court or other regulatory agency." In 2007, Sacks challenged Rule 13208 in a separate action before this court. *See Sacks I*, 648 F.3d at 949. We held that the SEC may not retroactively apply the rules it adopted at 72 Fed. Reg. 56410-12, including Rule 13208. *Id.* at 952.

The defendant arbitrators disqualified Sacks from representing Dang before FINRA because it was undisputed that he was barred from the securities industry as prohibited by Rule 13208. The arbitration panel stated in its order that "[u]nder the circumstances, the panel has no alternative but to disqualify Mr. Sacks . . . ." The panel based its authority to apply Rule 13208 on Rule 13413, which provides that a "panel has the authority to interpret and determine the applicability of all provisions under the Code." However, the panel further noted that it would allow Sacks "to assist a representative qualified under Rule 13208" in a future proceeding. Defendants Dietrich and Boesch signed the order. The third arbitrator on the panel did not join in the order.

Sacks filed a complaint in Marin County Superior Court against defendants Dietrich and Boesch, alleging intentional and negligent interference with contract and intentional and negligent interference with prospective economic advantage. Sacks alleged that by disqualifying him from representing Dang, the defendant arbitrators exceeded the scope of their authority under the Uniform Submission Agreement, FINRA rules, and California law. The defendants removed the case to federal court.

The district court granted the defendants' motion to dismiss and entered judgment dismissing all claims with prejudice. Among other decisions, the court determined it had jurisdiction over the claims, and that the claims were barred by arbitral immunity. This timely appeal followed.

## II

**[1]** The district court correctly held that it had jurisdiction over the action. A state court action may only be removed to federal court if that federal court could have exercised original jurisdiction. 28 U.S.C. § 1441(a). Sacks's claims are all state law causes of action. However, the alleged wrongful conduct that underlies these claims turns on a federal ques-

tion: whether the arbitrators exceeded their jurisdiction under the FINRA arbitration rules by applying Rule 13208 and barring Sacks from representing his client.

The district court's order was consistent with our holding in *Sparta Surgical Corporation v. National Association of Securities Dealers, Inc.*, 159 F.3d 1209, 1211 (9th Cir. 1998). In *Sparta*, we held that the district court had subject matter jurisdiction over a complaint alleging state common-law claims based on the de-listing and suspension of trading in Sparta's stock by the National Association of Securities Dealers ("NASD").[3] We reasoned that "although Sparta's theories are posited as state law claims, they are founded on the defendants' conduct in suspending trading and de-listing the offering, the propriety of which must be exclusively determined by federal law." *Id.* at 1212. Thus, the viability of any claim founded upon NASD's conduct depended on whether the association's rules were violated. "If NASD's actions conformed to the rules, there can be no viable cause of action; if its actions violated the rules, any claim falls under the imperative of 15 U.S.C. § 78aa which grants the federal courts 'exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder. . . .' " *Id.* (quoting 15 U.S.C. § 78aa). Here, Sacks's causes of action were "carefully articulated in terms of state law." *Hawkins v. Nat'l Ass'n of Sec. Dealers, Inc.*, 149 F.3d 330, 332 (5th Cir. 1998). Nevertheless, if the arbitrators were allowed to disqualify Sacks under FINRA's rules, there would be no viable cause of action. If, on the other hand, the arbitrators exceeded their jurisdiction in violation of FINRA rules, then Sacks's claims fall under the imperative of 15 U.S.C. § 78aa. Section 78aa conferred exclusive jurisdiction on the district court because the central question of this case is whether FINRA rules were violated.

---

[3]The National Association of Securities Dealers was a predecessor to FINRA. *See Sacks I*, 648 F.3d at 948 n.1 ("FINRA was created in 2007 through the consolidation of the National Association of Securities Dealers, Inc. and the member regulation, enforcement, and arbitration operations of the New York Stock Exchange." (citation omitted)).

Sacks's attempts to distinguish *Sparta* are not persuasive. He argues that he did not name FINRA or a FINRA employee as a defendant, and therefore the rules do not apply. However, in *Sparta*, subject matter jurisdiction existed because the state law causes of action turned upon an alleged violation of the NASD rules, not because NASD was a defendant. *See* 159 F.3d at 1212. The same reasoning applies here. Furthermore, although Sacks asserts that none of the four causes of action alleged in his compliant require a violation of federal law or FINRA rules in order to succeed, this assertion is contradicted by the face of his complaint. Sacks alleges that the arbitrators "wrongfully exceeded their authority under the arbitration submission agreement, FINRA rules and California law" when they prohibited Sacks from representing Dang because "FINRA rule [13208] itself does not give arbitrators [the] authority" to issue such a prohibition. Sacks contends that his claims raise nothing more than the arbitrators' contractual authority, but this court has rejected that argument where, as here, a violation of a rule or regulation promulgated under federal law was required to show the alleged breach of contract. *See Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 841 (9th Cir. 2004); *Sparta*, 159 F.3d at 1211.

Finally, Sacks attempts to distinguish *Sparta* on the ground that it was "predicated on subject matter committed exclusively to federal court." However, in this case, as in *Sparta*, liability turns on interpretation of rules that are approved by the SEC and whose violations are subject to exclusive federal jurisdiction. *See* 15 U.S.C. § 78aa. Sacks "may not avoid federal jurisdiction by omitting from the complaint federal law essential to his . . . claim or by casting in state law terms a claim that can be made only under federal law." *Sparta*, 159 F.3d at 1212 (citation omitted).

**[2]** In short, because application of federal law is necessary to resolve each of the state law theories, this action involves a substantial federal question. The district court correctly concluded that it had subject matter jurisdiction over the action.

### III

**[3]** The doctrine of arbitral immunity provides that "arbitrators are immune from civil liability for acts within their jurisdiction arising out of their arbitral functions in contractually agreed upon arbitration hearings." *Wasyl, Inc. v. First Boston Corp.*, 813 F.2d 1579, 1582 (9th Cir. 1987) (citations omitted); *see also Lundgren v. Freeman*, 307 F.2d 104, 117-18 (9th Cir.1962) (noting that "[i]f the[ ] decisions [of quasi-arbitrators] can thereafter be questioned in suits brought against them by either party, there is a real possibility that their decisions will be governed more by the fear of such suits than by their own unfettered judgment as to the merits of the matter they must decide."). Thus, "[a]s with judicial immunity . . . , arbitral immunity is essential to protect the decision-maker from undue influence and protect the decision-making process from reprisals by dissatisfied litigants." *Wasyl*, 813 F.2d at 1582.

**[4]** Of course, arbitral immunity does not extend to every act of an arbitrator. Arbitral immunity extends only to those acts taken by arbitrators "within the scope of their duties and within their jurisdiction." *Wasyl*, 813 F.2d at 1582 (citation omitted). The pivotal question is "whether the claim at issue arises out of a decisional act." *Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith*, 477 F.3d 1155 (10th Cir. 2007) (citation omitted). If the claim, "regardless of its nominal title, effectively seek[s] to challenge the decisional act of an arbitrator or arbitration panel . . . then the doctrine of arbitral immunity should apply. If not, the doctrine would not apply." *Id.* at 1159 (internal citations omitted).

**[5]** In this case, the arbitrators were acting within their jurisdiction and plaintiff's claims arise out of a decisional act. Thus, the district court properly applied the doctrine of arbitral immunity to bar plaintiff's claims.

Sacks argues that the doctrine should not apply because the defendant arbitrators exceeded their jurisdiction. He contends

first, that FINRA rules and applicable law precluded the arbitrators from deciding a representational issue; and second, that Sacks was not a party to the arbitration agreement and cannot be bound by the panel. We disagree.

**[6]** First, FINRA rules and applicable law dictate that defendant arbitrators were acting within their jurisdiction. Sacks's client formally submitted the dispute to FINRA and agreed to be bound by FINRA's rules. Rule 13413 provides that the arbitral "panel has the authority to interpret and determine the applicability of all provisions under the Code," and that "[s]uch interpretations are final and binding upon the parties." Rule 13208 provides that a party cannot be represented by an individual who has been suspended or barred from the securities industry and that "[i]ssues regarding the qualifications of a person to represent a party . . . may be determined by an appropriate court or other regulatory agency." Because Sacks was indisputably barred from the securities industry, there was no issue regarding his lack of qualification under FINRA rules to represent a party in a FINRA arbitration. Furthermore, even if there were an issue, the fact that courts or other agencies "may" resolve such an issue did not preclude the arbitral panel from doing so. The arbitral defendants were thus acting within their jurisdiction.

**[7]** Second, although Sacks was not a party to the arbitration agreement, he was still bound by it under ordinary contract and agency principles. *See, e.g., Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187-88 (9th Cir. 1986) (nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles). When Dang submitted his claim to FINRA, the FINRA arbitrators had jurisdiction to issue binding interpretations of FINRA rules, including the rule disqualifying Sacks from representing Dang. Because the arbitrators acted with full authority under the arbitration agreement, they cannot be subject to suit by a party representative.

## IV

The district court had subject matter jurisdiction and correctly dismissed the action because the claims were precluded by arbitral immunity.

**AFFIRMED.**